1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RONALD FRANK FIDGE**, <br><br> Plaintiff, <br><br> v. <br><br> **LAKE COUNTY SHERIFF'S DEPARTMENT, ET AL.**, <br><br> Defendants. | Case No.  13-cv-05182-YGR <br><br> **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

On November 6, 2013, plaintiff Ronald Frank Fidge, proceeding in *pro se*, filed the instant civil rights complaint under 42 U.S.C. Section 1983 against defendants James Gaskell (erroneously sued as "James Gaskill"), Grant Hardester LLC, Grant Hardester, Duane Haper (together, the "Hardester's defendants"), the Lake County Sheriff's Department, and Officer Steve Wright (together, the "Lake County defendants").[1]  Following dismissal of specified claims upon resolution of  the Lake County defendants' motion to dismiss, plaintiff seeks relief on the following claims:  (1) violation of plaintiff's fourth amendment rights by all defendants; (2) false arrest and imprisonment, against Officer Wright; and (3) a claim of excessive force against Officer Wright; and (4) intentional infliction of emotional distress, against Officer Wright and the Hardester's defendants.  (*See* Dkt. No. 114-1 ("Pltf. MSJ" at 12); Dkt. No. 43 ("Order on MTD").)

Now before the Court are the parties' cross motions for summary judgment.  (Dkt. No. 106

---

[1] Although plaintiff filed the complaint in *pro se* and is now representing himself, at times during this case he was represented by counsel, notably during part of his deposition.  (*See, e.g*., Deposition of Ronald Frank Fidge ("Fidge Dep.") Dkt. No. 107, 107-2 at 3 (noting appearance of counsel for plaintiff); *but see* Fidge Dep. at 149:5-15 (plaintiff appearing in pro se for Day 2 of deposition).)  Regardless, the Court has afforded plaintiff the benefit of leniency due to *pro se* litigants notwithstanding plaintiff's brief period of representation.

("Lake County MSJ"); Pltf. MSJ; Dkt. No. 129 ("Hardester's MSJ").)  Although plaintiff filed a lengthy opposition to the Lake County defendants' motion for summary judgment and an affirmative motion of his own, he did not originally file an opposition to the Hardester's defendants' motion.  In light of the fact that plaintiff is presently proceeding *pro se*, however, the Court provided plaintiff an additional opportunity to file a response to this motion.  (Dkt. No. 147.)  Such response was received on May 26, 2015.  (Dkt. No. 148 ("Pltf. Opp. to HD MSJ").)  The Hardester's defendants timely replied.  (Dkt. No. 154.)[2]

Having carefully considered all the papers and evidence submitted[3] and the pleadings in

[2] On June 1, 2015, plaintiff filed an amended memorandum of points and authorities in support of his opposition to the Lake County defendants' motion for summary judgment.  (Dkt. No. 153.)  Not only is such filing untimely under Local Civil Rule 7-3, plaintiff has not obtained leave of court to so file, nor has he provided any statement explaining his need to file an amended memorandum, which in large part appears to repeat arguments made in his original submission.  The Court has nonetheless considered such filing.  In addition, on June 10, 2015, plaintiff filed an amended declaration in support of his opposition to the Hardester's defendants' motion for summary judgment, and a sur-reply.  (Dkt. Nos. 155, 156.)  Although such filings were not permitted with leave of court, they largely repeat arguments previously made and the Court has considered them in issuing the instant order.

[3] In connection with his motion for summary judgment, plaintiff has submitted the following evidence:  (1) the Sheriff's Report from his arrest; (2) a transcript of selected portions of the Audio of the MAV DVD ostensibly produced by defendants in discovery; (3) a CD purporting to contain a recording of Officer Wright's call to police dispatch on October 3, 2013; (4) a letter from the District Attorney of Lake County to Fidge reflecting the district attorney's decision not to prosecute Fidge for trespassing, obstructing a peace officer, or annoying or molesting children; (5) a copy of defendants' statement regarding plaintiff's motion to compel, filed August 4, 2014; (6) a copy of what appears to be a private investigator report concerning the contents of the MAV audio DVD; (7) copies of medical records of plaintiff; (8) technical specifications for what appears to be a hearing aid; (9) the booking form for plaintiff's arrest; and (10) two sets of Officer Wright's responses to plaintiff's interrogatories.  (Dkt. No. 114-1 at 33-106.)  Defendants properly filed evidentiary objections in their opposition to plaintiff's motion.  (*See* Dkt. No. 124 at 9-13; Dkt. No. 128.)

The Court agrees that the evidence at issue was improperly submitted and inadmissible on multiple bases.  Most significantly, none of this evidence has been properly authenticated, and plaintiff has provided no foundation for the admission of this evidence.  Regardless, mindful of the fact that plaintiff is proceeding *pro se*, the Court has carefully considered this evidence, including listening to the recordings of plaintiff's arrest, watching the DVD, and listening to Officer Wright's call to dispatch.  Even had plaintiff's evidence been properly presented and deemed admissible, the Court finds that no disputed material fact would exist to preclude summary judgment in defendants' favor.  More simply, admission of this evidence would not undermine the

United States District Court
Northern District of California

this action, and for the reasons set forth below, the Court hereby **GRANTS** defendants' motions for summary judgment, and **DENIES** plaintiff's motion for summary judgment.[4]

## I.   BACKGROUND

The Court finds the following facts not subject to reasonable dispute, the majority of which are as alleged in plaintiff's complaint:

The events giving rise to the instant civil rights complaint occurred on October 3, 2013 at the Hardester's Market Shopping Center in Cobb, California.  At that location, Hardester's Market offers a variety of products for sale to the public, including food items and lumber. (Declaration of Duane Harper ("Harper Decl.") Dkt. No. 106-2 ¶ 3.)  GR Hardester, LLC owns the shopping center, which contains two other buildings, in which are located the Mountain High Coffee Shop and the Carvajal Real Estate Agency.  (Harper Decl. ¶¶ 3-5.)

Plaintiff regularly visits the shopping center.  (Dkt. No. 107-1 through 107-3 ("Fidge Dep.") at 68:4-22.)  As many as five days a week, plaintiff gets a cup of coffee or something to eat and spends about five or six hours hanging out at the coffee shop.  (*Id.* at 68:9-22.)  Plaintiff routinely talks to patrons, their children, and employees.  (Complaint ("Compl.") Dkt. No. 1 ¶ 9.)

In certain of those conversations, plaintiff has "demonstrate[d] why marriage is naturally appropriate between a man and a woman, and homosexuality is unnatural and violates the laws of nature and Gods [sic] law" using nuts and bolts as demonstratives.  (Compl. ¶ 9; Fidge Dep. at 82.)  He "used [. . .] nuts and bolts to suggest that two nuts or two bolts could not form a proper union."  (*Id.*)  He has also given out religious pamphlets.  (Fidge Dep. at 80-81.)

Some of these conversations involved children and were unwelcome.  (*See* Fidge Dep. at 74:22-24.)  This resulted in patrons complaining to law enforcement and management in the shopping center.  Plaintiff states that in September 2013, a man who frequents the coffee shop where plaintiff loiters "got angry" and complained to defendant Officer Wright and the owner of the coffee shop that plaintiff was talking to children about same-sex marriage, including use of

---

Court's ultimate ruling on the pending motions for summary judgment.

[4] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court determined this motion suitable for decision without oral argument.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    his nuts and bolts as demonstratives.  (Compl. ¶ 9; *see also* Fidge Dep. at 85:8-88:9.)  A few days

2    later, plaintiff was again at the shopping center and gave a young girl a religious pamphlet.

3    (Compl. ¶ 9; *see also* Fidge Dep. at 76:2-10.)  Her mother later complained about that

4    interaction, as did other managers and employees of the shopping center.  (Fidge Dep. at 76:9-10;

5    77-79; 257:2-19.)  Complaints continued, and following that, Officer Wright told plaintiff that

6    although he has a right to distribute literature, he has to "be careful talking to children under the

7    age of 18."  (Compl. ¶ 9; Fidge Dep. at 101, 105; 325.)

8         Duane Harper, the Operations Manager for Hardester's Markets and Hardware,

9    confirmed that starting in September 2013, complaints were lodged concerning plaintiff's

10   behavior.  (Harper Decl. ¶ 6.)  According to complaints Harper received, plaintiff had been

11   approaching unaccompanied minors without the consent of, and outside the presence of, their

12   parents.  (*Id*.)  Further corroborating plaintiff's statements, Harper was informed that plaintiff

13   was inappropriately discussing the issue of same-sex marriage with unaccompanied children.

14   (*Id*.)  Harper declared that he had received complaints from a number of adults that plaintiff was

15   being a nuisance to them at the coffee shop and in the parking lot by, for example, impeding their

16   free passage, verbally harassing and scaring them, and frightening some of the children.  (*Id*.)

17        Harper, concerned that plaintiff was talking to children outside the presence of their

18   parents, impeding the passage of patrons,  and potentially compromising the safety of patrons at

19   the center, spoke with plaintiff about his behavior on at least two occasions.  (*Id*. at ¶¶ 7-8.)

20   Plaintiff assured Harper that his unwelcome conduct would cease.  (*Id*. at ¶ 9.)  In deposition,

21   plaintiff confirmed that at least one such conversation took place, and that "it was obvious that

22   things were heating up, that people were complaining." (Fidge Dep. at 116:16-119:10.)

23        In these conversations, Harper asked plaintiff not to harass patrons or force unwelcome

24   conversations upon uninterested adults or unaccompanied children, and suggested that before

25   talking to children, plaintiff might ask for parents' permission.  (Harper Decl. ¶ 8.)  Harper

26   further informed plaintiff that he would not be welcome upon and would be asked to leave the

27   shopping center if he continued to behave in this manner.  (*Id*.)  Fidge does not remember this

28   aspect of the conversation, but remembers that he was told to "be careful." (Fidge Dep. at 118:4-

22.)  Although plaintiff denied that Harper had told him to stop annoying or speaking to children, he admitted that Harper had told him that he (Harper) had received a report that Fidge had been annoying children.  (Fidge Dep. at 165:8-10.)  Plaintiff further testified that Harper had informed him that  Officer Wright was conveying similar complaints to Harper.  (Fidge Dep. at 166:13-18.)

Despite this and previous conversations with Officer Wright, plaintiff continued to have conversations with children without their parents present.  (Fidge Dep. at 167:18-168:19.)  On or about October 2, 2013, plaintiff was again patronizing the coffee shop.  Three boys were nearby, and a conversation ensued between plaintiff and the boys.  (Compl. ¶ 9; *see* Fidge Dep. at 92-96.)  Plaintiff alleges that these boys were part of an entrapment scheme designed by Officer Wright to catch plaintiff disobeying Officer Wright's prior admonition that plaintiff should not talk to unaccompanied minors.  (Fidge Dep. at 88:10-22; 93:10-12 ("[. . .] I think it would be obvious to anybody that is not asleep, that I was being framed."; 264:22-25 ("I kind of thought the deputy was going to show up like he always had, especially since just the day before those kids approached me at the table.  I knew that was a setup [. . .]").)

On October 3, 2013, plaintiff was once again at the coffee shop.  James Gaskell, the store manager who had been informed by Harper of the repeated complaints concerning plaintiff's conduct, approached plaintiff and told him to finish his purchase and leave the shopping center property.  (Fidge Dep. at 110:13-18; 119:11-23.[5])  Plaintiff at that time knew that Gaskell was the manager of the Hardester's and that the store owned the entire shopping mall premises, and that Gaskell was acting as a representative of the owners of the property in asking plaintiff to leave.  (Fidge Dep. at 132:12-20.)  Plaintiff nonetheless refused, telling

---

[5] In his deposition, plaintiff maintained that he did not know that Gaskell had told him to leave to shopping center property and maintained that he only thought he needed to leave the coffee shop.  (*See* Fidge Dep. at 171:15-172:16.)  However, elsewhere in his deposition, plaintiff admitted that Gaskell had asked him to leave the property.  Moreover, in his answers to this specific question, plaintiff was evasive and did not directly answer, requiring counsel to ask the same question four times.  (*See id.*)  In any event, any dispute on this point is immaterial, because plaintiff does not dispute the larger issue:  when told by Gaskell to leave the property, he refused and sat down outside of the coffee shop.  (*See e.g.*, Fidge Dep. at 262.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Gaskell to "call the sheriff, and make a report." (Fidge Dep. at 119:22-120:14.) He then sat

2    down outside the shop with his coffee. (*Id*.) Gaskell then called Harper and informed him of

3    plaintiff's refusal to leave, and Officer Wright was called. (Declaration of James Gaskell

4    ("Gaskell Decl.") Dkt. No. 106-4 ¶ 5-6.)

5        At approximately 3:15 p.m., Harper again spoke with Officer Wright and informed him

6    that plaintiff was persisting in this behavior and that over the previous days, Harper had received

7    another complaint from a parent. (Harper Decl. ¶ 10.) Harper informed Officer Wright that he

8    wanted plaintiff removed from the property for trespassing and arrested if he refused to leave.

9    (*Id*.) Harper authorized James Gaskell, the manager of Hardester's Market, to ask plaintiff to

10   leave and inform him that he was trespassing. (*Id*.)

11       Officer Wright drove to the shopping center and saw plaintiff sitting outside of the coffee

12   shop. Officer Wright informed Gaskell that he would need to effect a citizen's arrest for

13   trespassing. (Declaration of Steve Wright ("Wright Decl.") Dkt. No. 106-3 ¶ 6; Gaskell Decl. ¶

14   6.) Gaskell agreed. (Gaskell Decl. ¶ 6.)

15       In the meanwhile, plaintiff left his seat in front of the coffee shop and went inside the

16   Cobb Mountain Real Estate Office.   He was sitting in the office, talking to real estate agent Art

17   Carvajal, when Officer Wright and James Gaskell arrived. (Fidge Dep. at 173:23-25;

18   Declaration of Art Carvajal ("Carvajal Decl.") Dkt. No. 124-2 at ¶¶ 6-8.) Officer Wright told

19   plaintiff to step outside and plaintiff refused. (Fidge Dep. at 174:11-24; Wright Decl. ¶ 7;

20   Gaskell Decl. ¶ 7; Carvajal Decl. at ¶ 8.) Wright entered the office, stating that plaintiff's refusal

21   to exit constituted resisting arrest. (Fidge Dep. at 176:11-15.) At that point, Gaskell entered the

22   office and stated that he had previously asked plaintiff to leave the shopping center, and stated

23   that he was placing plaintiff under citizen's arrest. (Fidge Dep. at 176:16-177:6; Wright Decl. ¶

24   7.) Fidge stood up, and Wright then asked plaintiff to turn around in order to arrest him.

25   Plaintiff refused. (Fidge Dep. at 182:4-12; Wright Decl. ¶ 7; Gaskell Decl. ¶ 7.) Wright then

26   asked plaintiff to turn around several times. (Fidge Dep. at 182:19-183:4; Wright Decl. ¶ 7.)

27   Plaintiff continued to refuse. Wright then grabbed plaintiff's shoulder and turned him around.

28   (Fidge Dep. at 184:9-187:5; Wright Decl. ¶ 8; Gaskell Decl. ¶ 8.) Office Wright then took out

his taser and yelled "I'm going to taser you" repeatedly, and plaintiff responded, "Go right ahead. Go ahead. Go ahead. Go right ahead." (Fidge Dep. at 187:13-17; *see also* Wright Decl. ¶ 8.)

Officer Wright put the taser back in its holster and forced Plaintiff to the floor, hitting his left shoulder and the left side of his face on the ground, in an attempt to arrest him. (Fidge Dep. at 188-190; Wright Decl. ¶ 8.) As plaintiff was held prone on the ground with his arms out to the side, Wright instructed him to "put your hands behind your back" and "quit resisting." (Fidge Dep. at 196-199; Wright Decl. ¶ 8; *see also* Gaskell Decl. ¶¶ 8-9.) When plaintiff did not comply, Officer Wright deployed his pepper spray in two bursts, one of which hit plaintiff in the face, and the other on the back of his head. (*Id.* at 199-200; Wright Decl. ¶ 8.) Plaintiff then submitted.

Plaintiff was put in handcuffs and led to Officer Wright's vehicle, where Wright called dispatch and had the fire department come out to flush plaintiff's eyes from the pepper spray. (*See* Fidge Dep. at 223; Wright Decl. ¶ 10.)

## II.   LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See id*.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *See id.* at 322–23. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the evidence in opposition to the motion is "merely colorable, or is not significantly

probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted). However, "self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

Once the moving party meets its initial burden, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at 324). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the non-moving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 322.

At summary judgment, the judge must view the evidence in the light most favorable to the non-moving party: if evidence produced by the moving party conflicts with evidence produced by the non-moving party, the judge must assume the truth of the evidence set forth by the non-moving party with respect to that fact. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014); *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). A court may not disregard direct evidence on the ground that no reasonable jury would believe it. *See Leslie*, 198 F.3d at 1158 (where non-moving party's direct evidence raises genuine issues of fact but is called into question by other unsworn testimony, district court may not grant summary judgment to moving party on ground that direct evidence is unbelievable). The district court may not resolve disputed issues of material fact by crediting one party's version of events and ignoring another. *See Wall v. County of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004) ("By deciding to rely on the defendants' statement of fact [in deciding a summary judgment motion], the district court became a jury.") But when the parties tell conflicting stories, "one of which is blatantly contradicted by the record, so that no

8

1   reasonable jury could believe it, a court should not adopt that version of the facts for purposes of

2   ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380–83 (2007).

3       It is not the task of the district court to "scour the record in search of a genuine issue of

4   triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The non-moving party has the

5   burden of "identify[ing] with reasonable particularity the evidence that precludes summary

6   judgment." *Id*. If the non-moving party fails to do so, the district court may properly grant

7   summary judgment in favor of the moving party. *See id*.; *see, e.g*., *Carmen v. San Francisco*

8   *Unified School District*, 237 F.3d 1026, 1028–29 (9th Cir. 2001) (even if there is evidence in the

9   court file which creates a genuine issue of material fact, a district court may grant summary

10  judgment if the opposing papers do not include or conveniently refer to that evidence). Although

11  the district court has discretion to consider materials in the court file not referenced in the

12  opposing papers, it need not do so. *Id*. at 1029. "The district court need not examine the entire

13  file for evidence establishing a genuine issue of fact." *Id*. at 1031.

14  **III.   DISCUSSION**

15      **A.  Counts 1 and 3:  Fourth Amendment Violation**

16      Plaintiff's fourth amendment claims, pursued under Section 1983, are presented in Counts

17  One and Three of his complaint and are advanced against defendants Wright, Lake County

18  Sheriff's Department, and the Hardester's defendants. First, in Count One, he challenges the

19  legality of his arrest and contends that it was unreasonable due to lack of probable cause. Second,

20  in Count Three, he alleges an excessive use of force in effecting his arrest. The parties cross-move

21  for summary judgment on each. For the reasons set forth below, the Court finds that no

22  constitutional violation occurred here and that therefore plaintiff's Fourth Amendment claims fail

23  as a matter of law.

24      **1.   Legality of Arrest**

25      Plaintiff argues that his arrest was in violation of his Fourth Amendment rights because it

26  was not supported by probable cause. He brings this claim against both Officer Wright and the

27  Hardester's defendants.

28      The Fourth Amendment requires that a warrantless arrest be supported by probable cause.

United States District Court
Northern District of California

9

*Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Michigan v. Summers*, 452 U.S. 692, 700 (1981) (an arrest is unlawful unless there is probable cause to support it).   Officers need probable cause to arrest the suspect for any offense, not necessarily the offense they stated was the reason for the arrest, but the offense must be set forth in a particular criminal statute.  *Torres v. City of Los Angeles*, 548 F.3d 1197, 1207 (9th Cir. 2008).

An arrest is supported by probable cause if, under the totality of the circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime.  *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010); *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004); *Grant v. City of Long Beach*, 315 F.3d 1081, 1085 (9th Cir. 2002).  "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules."  *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  The plaintiff bears the burden of proving the absence of probable cause.  *Beck v. City of Upland,* 527 F.3d 853, 864 (9th Cir. 2008).

The inquiry is not whether the suspect actually committed the offense.  Rather, it centers on whether a reasonable officer had probable cause to think that the suspect could have committed the offense.  *Blankenhorn v. City of Orange*, 485 F.3d 463, 475 (9th Cir. 2007) (arresting officers had probable cause to arrest plaintiff for trespassing under the  circumstances known to the officers).  "[P]robable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily."  *Hart v. Parks*, 450 F.3d 1059, 1066 (9th Cir. 2006) (citing *Franks v. Delaware*, 438 U.S. 154, 165 (1978)) (internal quotation marks omitted).

Officer Wright seeks qualified immunity from this claim.  (Lake County MSJ at 18.) "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Defendants are entitled to such relief only if the facts alleged and evidence submitted, viewed in the light most favorable to plaintiff, show that Officer Wright's conduct did not violate a federal right; or, if it did, the scope of that right was not clearly established at the time.  *See, e.g., Beier,*

United States District Court
Northern District of California

354 F.3d at 1064.

Finding no constitutional violation occurred here, the Court need not reach the second prong of the qualified immunity analysis.  The facts not subject to reasonable dispute in this case establish that probable cause existed for Officer Wright's arrest of plaintiff.  A prudent person would have concluded that plaintiff was actively engaged in trespassing at the Hardester's shopping center on October 3, 2013.[6]

The Court's finding is based on the totality of the circumstances known to Officer Wright at the time of the arrest.  Thus:  in the month prior to the arrest, patrons had complained to Hardester's management about plaintiff's behavior and what was perceived as inappropriate and harassing conduct, particularly concerning contact with unaccompanied minors.  The factual record is replete with uncontroverted evidence that plaintiff was the subject of such complaints, and that at the Hardester's shopping center, plaintiff engaged in conversations with children outside the presence of their parents concerning topics such as homosexuality and same-sex marriage.  Duane Harper stated that as the operations manager for Hardester's, he received complaints from patrons that plaintiff's behavior was inappropriate and harassing, and that plaintiff was scaring children.  Harper relayed this information to Officer Wright.  Moreover, Harper stated that he raised this issue with plaintiff, informing him at a minimum that he needed to be careful in such communications, and apprising him that such conduct was unwelcome.  Harper also attested that he told plaintiff that should plaintiff continue to behave in this manner, he would no longer be welcome at the shopping center.

Apart from his conversations with Harper, Officer Wright had been notified independently of complaints about plaintiff, and was aware generally of plaintiff's speaking with children about such topics without their parents present.  He was also aware that the owners of the shopping center did not approve of this behavior and were concerned that customers were being harassed by

---

[6] Under California law, with enumerated exceptions, "every person who willfully commits a trespass by any of the following acts is guilty of a misdemeanor: [. . .]   (m) Entering and occupying real property or structures of any kind without the consent of the owner, the owner's agent, or the person in lawful possession."  Cal. Penal Code § 602 (West).

United States District Court
Northern District of California

plaintiff.  In prior conversations with plaintiff, Officer Wright personally informed plaintiff that he should not harass customers or children, or else he would be asked to leave the shopping center. (Wright Decl. at ¶ 4.)  Plaintiff admits that he continued to talk to children despite these conversations.

When Harper called Officer Wright on October 3, 2013, Harper told Wright that plaintiff was engaging in precisely the sort of behavior that had produced the earlier complaints and warnings.  Harper further advised Wright that he and the owners wanted plaintiff removed from the property for trespassing.  With this information in mind, Officer Wright went to the shopping center and met with James Gaskell, who confirmed that plaintiff was on the premises despite having been formally asked by Gaskell to leave.  When Officer Wright and Gaskell located plaintiff inside the real estate office, plaintiff refused to come outside.

At that point, Officer Wright was aware of material, undisputed facts that confirmed the probability that plaintiff was committing a trespass in violation of California Penal Code 602(m).  First, plaintiff had openly refused to leave the premises when told to by Gaskell, instead inviting Gaskell to call the sheriff and file a report, and had remained in the shopping center.  Second, Officer Wright had asked plaintiff to exit that office, and plaintiff had refused.

Third, Officer Wright had personally observed Gaskell's citizen's arrest of plaintiff for trespassing.  Under California law, "a private person may arrest another: 1. For a public offense committed or attempted in his presence. [. . .]" Cal. Penal Code § 837 (West).  The fact that Gaskell effected such an arrest in Wright's presence further reinforces that a reasonable officer would conclude that there was a fair probability that plaintiff had committed the crime of trespass.[7]

---

[7] Although it is of no matter here, the Court notes for purposes of clarity that where a citizen's arrest is at issue, the federal and state requirements for probable cause, and therefore reasonableness, diverge.  "The federal Constitution requires police officers to have independent probable cause when effectuating a citizen's arrest." *Hopkins*, 573 F.3d at 774.  Under state law, "[a] peace officer who accepts custody of a person following a citizen['s] arrest is not required to correctly determine whether the arrest was justified." *Kesmodel v. Rand*, 119 Cal.App.4th 1128, 1137 (2004) (citing *Kinney v. County of Contra Costa*, 8 Cal.App.3d 761, 768, (1970)); *Arpin*, 261 F.3d at 920–921.  In California, where the citizen's arrest is valid under state law, the officer effectuating the citizen's arrest may not be held liable. *Id.* (citing Cal. Penal Code § 847(b)).

United States District Court
Northern District of California

United States District Court
Northern District of California

1        These facts, which were corroborated by plaintiff, Wright, Gaskell, and Carvajal,

2   supported by a historical pattern of complaints, and complemented by a present, immediate

3   request for assistance, render it impossible for any jury to find that there was no probable cause

4   supporting Officer Wright's arrest of plaintiff.  Under the totality of the circumstances known to

5   Officer Wright, there was a fair probability that on the afternoon of October 3, 2013, plaintiff was

6   in the process of committing a trespass at the Hardester's shopping center.  *Luchtel*, 623 F.3d at

7   980; *Beier*, 354 F.3d at 1065.

8        Plaintiff assets two arguments for his claim.  Neither persuades.

9        First, plaintiff argues that because the district attorney later decided not to prosecute

10  plaintiff for the crimes for which he had been arrested, probable cause was lacking.  The argument

11  lacks merit.  The question of whether an arrest was supported by probable cause relies for support

12  on the circumstances known to the officer at the time the arrest was executed.  The fact that the

13  district attorney elected not to prosecute plaintiff at a later time does not bear on the question of

14  whether probable cause existed.  Numerous unrelated reasons may exist for a decision not to

15  prosecute.  As set forth above, the Court finds that such probable cause did exist.

16       Next, Plaintiff argues that his arrest was without legal basis because he had permission to

17  be in the real estate office from Art Carvajal, a shopping center tenant.  He argues that he was

18  therefore not trespassing, nor could a reasonable officer have believed him to be.  (Pltf. Opp. to

19  HD MSJ at 8, 13-14.)  The argument fails for two reasons.  First, plaintiff's contention that he

20  possessed permission to be in the real estate office is unsupported by any evidence.  An allegation

21  in a complaint or plaintiff's own declaration is insufficient.  Indeed, plaintiff's assertion that he

22  had permission to be on the shopping center property is belied by substantial evidence of record

23

24  Under federal law, however, an officer's arrest, even if preceded by a citizen's arrest, must be
    based on probable cause to believe that the arrestee committed a crime.  *See Arpin v. Santa Clara*
25  *Valley Transportation Agency,* 261 F.3d 912, 924 (9th Cir. 2001) (internal quotation and citation
    omitted); *see also Kuba v. Marine World Joint Powers Authority*, 2006 WL 3041234 at *5 (E.D.
26  Cal. Oct. 24, 2006) (denying police officers' motion for summary judgment of qualified immunity
    on Fourth Amendment claim; holding, relying on *Arpin*, that a "police officer ... is not entitled to
27  hide behind a citizen's arrest in place of making a determination of whether probable cause
    exists").  Here, the Court finds that Officer Wright had probable cause for plaintiff's arrest, apart
28  from Gaskell's citizen's arrest of plaintiff.

13

1    such that no reasonable disputed question exists.  Specifically, in his declaration, Art Carvajal

2    stated that Fidge entered the real estate office "look[ing] confused and afraid" and Carvajal got the

3    "impression that Mr. Fidge was attempting to hide from someone."  (Carvajal Decl. ¶ 6.)

4    Nowhere does Carvajal indicate that he granted permission for Fidge to remain in the office.

5    Carvajal's description of Fidge's behavior also does not support the notion that Fidge had received

6    permission, express or implied, to be in Carvajal's office.  Specifically, Fidge did not try to

7    transact any real estate business with Carvajal upon entry, but rather sat down in his office and

8    "began mumbling for several minutes."  (*Id*. at ¶ 7.)  Asked to step outside of the office by Officer

9    Wright and Gaskell, Carvajal confirmed that Fidge declined and resisted Officer Wright's

10   subsequent requests.  Carvajal maintains that the reason he did not personally ask Fidge to leave

11   the office was because Fidge had already been asked to leave "several times."  (*Id*. at ¶ 10.)

12         Second, and more fundamentally, whether or not plaintiff had permission to be in the real

13   estate office, without more, does not bear ultimately on the question of whether probable cause

14   existed for his arrest.  The question of whether probable cause existed centers on whether a

15   reasonable officer had probable cause to think that Fidge could have committed the offense of

16   trespassing.  *See Blankenhorn*, 485 F.3d at 475 (arresting officers had probable cause to arrest

17   plaintiff for trespassing under the  circumstances known to the officers).  Importantly, although

18   plaintiff argues strenuously that he had permission to be on the premises, he has offered no

19   evidence other than his own conclusions to support any finding that Officer Wright would have

20   been aware of such permission, even had it been granted.  For example, Fidge has offered no

21   evidence that Carvajal conveyed such permission to Officer Wright either expressly or through

22   any other means.  Plaintiff places much emphasis on the fact that he was sitting in the office

23   talking to Carvajal, but again, this evidence is contradicted by substantial evidence of record,

24   namely Carvajal's declaration, and regardless, cannot overcome the weighty evidence supporting

25   Officer Wright's reasonable belief that plaintiff was committing a trespass in his presence.  For all

26   the reasons stated above, "under the totality of the circumstances known to [Officer Wright], a

27   prudent person would have concluded that there was a fair probability that [the defendant] had

28   committed a crime."  *See Buckner,* 179 F.3d at 837.

United States District Court
Northern District of California

14

1   Accordingly, plaintiff's motion for summary judgment on this claim is **DENIED** and Lake

2   County Defendants' motion is **GRANTED** as to this claim.

3   ## 2.   Excessive Force

4   Plaintiff next contends that the force used by Officer Wright to execute the arrest was

5   excessive and therefore in violation of his Fourth Amendment rights.  Officer Wright seeks

6   summary judgment that the use of force was reasonable in light of the totality of the

7   circumstances, and that if the Court deems the force used to be unreasonable, qualified immunity

8   is warranted and should bar this claim.  (Lake County MSJ at 18.)

9   An allegation of the use of excessive force by a law enforcement officer in effectuating an

10  arrest states a valid claim under Title 42 U.S.C. section 1983.  *See Rutherford v. City of Berkeley*,

11  780 F.2d 1444, 1447 (9th Cir. 1986), *overruled on other grounds by Graham v. Connor*, 490 U.S.

12  386 (1989).  Excessive force claims which arise in the context of an arrest or investigatory stop of

13  a free citizen are analyzed under the Fourth Amendment reasonableness standard.  *See Graham,*

14  490 U.S. at 394-95; *Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th Cir. 1994), *cert. denied*,

15  513 U.S. 1152 (1995).  Neither tackling nor punching a suspect to make an arrest necessarily

16  constitutes excessive force.  *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d

17  443 (1989) (" 'Not every push or shove, even if it may seem unnecessary in the peace of the

18  judge's chambers,' ... violates the Fourth Amendment") (quoting *Johnson v. Glick*, 481 F.2d 1028,

19  1033 (2d Cir. 1973)).  But "even where some force is justified, the amount actually used may be

20  excessive." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).  The question in all cases is

21  whether the use of force was "objectively reasonable in light of the facts and circumstances

22  confronting" the arresting officers.  *Graham*, 490 U.S. at 397, 109 S.Ct. 1865 (internal quotation

23  marks omitted).

24  "To determine whether officers used excessive force during an arrest, courts balance 'the

25  nature and quality of the intrusion on the individual's Fourth Amendment interests against the

26  countervailing governmental interests at stake.'" *Luchtel*, 623 F.3d at 980 (quoting *Graham*, 490

27  U.S. at 396).  Relevant factors for consideration in this case-by-case inquiry include "'the severity

28  of the of the crime at issue, whether the suspect poses an immediate threat to the safety of the

United States District Court
Northern District of California

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* at 980 (quoting *Graham*, 490 U.S. at 396). These factors are not exclusive. *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011). The "most important" factor is whether the individual posed an immediate threat to the safety of officers or others. *Id.*    Courts also consider, under the totality of the circumstances, the "quantum of force used to arrest the plaintiff, [citation], the availability of alternative methods of capturing or detaining the suspect, [citation], and the plaintiff's mental and emotional state [citation]." *Luchtel*, 623 F.3d at 980.

The reasonableness inquiry in excessive force cases is an objective one, the question being whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation, and without the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396-97; *Luchtel*, 623 F.3d at 980. Police officers are not required to use the least intrusive degree of force possible; they are required only to act within a reasonable range of conduct. *See Forrester*, 25 F.3d at 806-07 (use of minimal and controlled force in manner designed to limit injuries reasonable); *see also Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) (requiring officers to find and choose least intrusive alternative would require them to exercise superhuman judgment), *cert. denied*, 515 U.S. 1159 (1995).

Although unreasonable force claims are generally questions of fact for a jury, summary judgment may be granted if, after resolving all factual disputes in favor of the plaintiff, a court concludes that the officer's use of force was objectively reasonable under the circumstances. *See Gregory v. County of Maui*, 523 F.3d 1103, 1108 (9th Cir. 2008); *Scott*, 39 F.3d at 915. The issue becomes one of defining an objectively reasonable range of conduct. *See, e.g., Johnson v. Woodard*, 340 F.3d 787, 792-93 (9th Cir. 2003) (finding deputy sheriff's pulling and twisting of armed bank robbery suspect to extract him from the back seat of his car and take him into custody following a high-speed car chase and crash objectively reasonable as a matter of law); *Saman v. Robbins*, 173 F.3d 1150, 1155-57 (9th Cir. 1999) (finding officer's split-second judgment to administer a single kick to subdue plaintiff in tense, uncertain and dangerous situation in which one officer had already been shot objectively reasonable as a matter of law); *Forrester*, 25 F.3d at 807 (finding the use of pain compliance techniques on nonresisting abortion protesters that

resulted in bruises, a pinched nerve and a broken wrist was objectively reasonable).

A defendant is entitled to summary judgment on a claim of excessive force during arrest where there is no genuine issue for trial because the record taken as a whole would not lead a rational trier of fact to find for the plaintiff. *See Henderson v. City of Simi Valley*, 305 F.3d 1052, 1061 (9th Cir. 2002) (summary judgment in favor of defendant proper where evidence in the record in support of plaintiff's excessive force claim was "woefully sparse"); *see also Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (plaintiff's statement that she "did not resist arrest in any way" is conclusory allegation that is insufficient to defeat defendant's motion for summary judgment).

Here, because the Court finds that the force used was reasonable in light of the circumstances, it finds that Officer Wright is entitled to summary judgment. There is no genuine issue for trial because the record as a whole cannot support a finding in plaintiff's favor. Thus, the Court need not reach Officer Wright's qualified immunity argument.

The facts, taken in a light most favorable to plaintiff, are as follows. Plaintiff admits that on October 3, 2013, he was sitting in the real estate office when Deputy Wright asked him to come outside. Plaintiff refused. Plaintiff then admits that Wright entered the office and asked him to stand up and turn around such that Wright could place him under arrest. Plaintiff stated that he stood up, but admits that he refused to turn around. Wright then asked plaintiff to turn around several times. (Fidge Dep. at 182:19-183:4; Wright Decl. ¶ 7.) Plaintiff states that Wright put his hand on plaintiff's and attempted to turn him around, and plaintiff admits that he refused to comply with Wright's repeated requests. Plaintiff further admits that he was so defiant of Officer Wright's directives that when Officer Wright threatened to tase him in order to gain compliance, plaintiff actively encouraged Officer Wright to do so. Specifically, plaintiff responded, "Go right ahead. Go ahead. Go ahead. Go right ahead." (Fidge Dep. at 187:16-17.) Only after repeated requests for compliance and the threat of using a taser proved unsuccessful, did Officer Wright "hoist" himself on plaintiff's back to take him to the ground in order to execute the arrest. Plaintiff then fell prone onto the ground. As plaintiff was held prone on the ground with his arms out to the side, Wright instructed him to "put your hands behind your back" and "quit resisting."

1   (Fidge Dep. at 196-199.)  Plaintiff does not dispute that he did not put his arms behind his back.

2   Officer Wright then deployed his pepper spray in two bursts, one of which hit plaintiff in the face,

3   and the other on the back of his head.  (*Id.* at 199-200.)

4         Viewing such evidence even in the light most favorable to plaintiff, the Court finds that no

5   rational trier of fact could find for plaintiff.  The evidence is undisputed that plaintiff was actively

6   resisting arrest.  He admitted that he repeatedly refused to comply with essentially all of Officer

7   Wright's instructions, namely that he exit the office, turn around, and place his hands behind his

8   back.  Officer Wright confirmed these repeated refusals, as did Gaskell.  Plaintiff's active

9   resistance, first when seated and second when he was standing next to Officer Wright, escalated

10  the situation, culminating in plaintiff taunting Officer Wright and encouraging him to deploy his

11  taser in order to effectuate the arrest, and Officer Wright caused plaintiff to fall to the ground in

12  order to do so.  This level of force was objectively reasonable under the circumstances.  Plaintiff is

13  a tall person, six foot, three inches, and one hundred and ninety pounds.  (Fidge Dep. at 9:4-15.)

14  Officer Wright was unaware whether plaintiff had any concealed weapons on him that could be

15  used against the officer or the witnesses at the scene, Gaskell or Carvajal.  Despite telling plaintiff

16  that he was under arrest and needed to submit, plaintiff continued to refuse adamantly.  Rather

17  than use his taser, despite plaintiff's goading that he do so, Wright used lesser force by causing

18  plaintiff to fall to the ground to secure the arrest.  This was not an excessive use of force.

19        To the extent that plaintiff bases his excessive force claim on Officer Wright's use of

20  pepper spray, plaintiff admits facts that establish that the manner in which the pepper spray was

21  used was reasonable under the circumstances.  Critically, plaintiff does not contend that he

22  followed Officer Wright's instructions to place his hands behind his back while he was prone on

23  the ground.  Rather, plaintiff in deposition stated that his arms were out to the side.  Plaintiff does

24  not dispute that Officer Wright told him repeatedly to place his hands behind his back.

25  Furthermore, plaintiff admits that only one burst of the spray hit him in the face, and that the other

26  hit him in the back of the head.  He does not contend that the pepper spray was sprayed

27  continuously or for an extended period of time, and there is no record evidence that anything more

28  than a short burst of the pepper spray was released into plaintiff's face.  Only after the pepper

United States District Court
Northern District of California

spray had been deployed, was Officer Wright able to effectuate the arrest.  Plaintiff further admits that after he was arrested, he was taken to Officer Wright's vehicle and Wright called the fire department to come and flush out plaintiff's eyes.

In light of this evidence, the Court finds that it was reasonable as a matter of law for Officer Wright to direct one short burst of pepper spray toward plaintiff's face in order to secure his arrest, and that Officer Wright's prompt call to the fire department in order to flush plaintiff's eyes did not render the use of force excessive.

Accordingly, the Lake County defendants' motion is **GRANTED** as to this issue, and plaintiff's motion is **DENIED**.  Because plaintiff has failed to establish a deprivation of his constitutional rights under the Fourth Amendment, his first and third claims against Officer Wright and the Lake County Sheriff's Department are **DISMISSED WITH PREJUDICE**.

### 3.   1983 Claim against Hardester's Defendants

Plaintiff argues that the Hardester's defendants violated his rights under the Fourth Amendment in effecting a false arrest by conspiring with Officer Wright in order to effectuate the arrest and utilize excessive force.  (Pltf. MSJ at 17-18.)  The Hardester's defendants counter that summary judgment in their favor is warranted because there was no constitutional violation, and furthermore, their actions did not constitute state action as required to establish liability under Section 1983.  As confirmed below, because the Court finds no constitutional violation occurred here, it need not reach the question of whether the acts of these private entities amounted to "state action."

Section 1983 provides that a person acting under color of state law is liable for the violation of any privilege or immunity granted by the United States Constitution.  42 U.S.C. § 1983.  To prove a violation of Section 1983, plaintiff must show that the Hardester's defendants (1) deprived him "of a right secured by the Constitution, and (2) acted under color of state law." *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989).

As to the first prong, plaintiff's  Section 1983 claim against the Hardester's defendants depends for its validity on plaintiff's contention that there was no probable cause for the arrest, thus rendering it a violation of his Fourth Amendment rights.  As explained above extensively, this

United States District Court
Northern District of California

19

contention is without merit.  There is no reasonable dispute that probable cause existed for Officer Wright's arrest of plaintiff, even wholly apart from Gaskell's citizen's arrest of plaintiff.  In addition, there was no excessive use of force.  Officer Wright's actions in effecting plaintiff's arrest, including taking plaintiff down to the ground and discharging one brief shot of pepper spray into his face, were objectively reasonable in light of the fact that plaintiff was actively resisting the arrest and expressly declining to do as Officer Wright directed.  There was thus no constitutional deprivation.[8]

Furthermore, there is no basis for plaintiff's claim that actions undertaken by the Hardester's defendants independently constituted a deprivation of his Fourth Amendment rights.  As plaintiff conceded in his deposition, aside from engaging the police with respect to plaintiff's trespass in order to have him arrested, the Hardester's defendants did not restrain him or touch him at all.  (Fidge Dep. at 299:24-300:4.)  There is no record evidence to suggest that any of the Hardester's defendants restrained plaintiff or in any way restricted his liberty.  The undisputed evidence shows that it was Officer Wright alone, not a Hardester's defendant, who effected what may be understood as a "seizure" for Fourth Amendment purposes.

_____

[8] Additionally, as discussed more in depth below, there is no reasonable dispute that the Hardester's defendants executed the citizen's arrest in conformity with California state law.  In California, a private person may arrest another for a public offense committed or attempted in his presence.  Cal. Penal Code § 837(1).  A public offense is defined as "an act committed ... in violation of a law forbidding ... it," which is punishable on conviction by, *inter alia,* imprisonment or a fine.  Cal. Pen. Code § 15(2) and (3).  The alleged crime in this case is misdemeanor trespass, which provides that it is a trespass to occupy property another's property without consent.  Cal. Penal Code § 602(m).  Conviction on a charge of misdemeanor trespass carries the possibility of a fine, imprisonment, or both.  *Id.* California Penal Code § 602 is a public offense within the meaning of California Penal Code § 837.

It is undisputed that Gaskell had authority to tell plaintiff to leave the shopping center, that he did so, and that plaintiff refused.  Indeed, upon expressly refusing to leave the premises, plaintiff *invited* Gaskell to call the sheriff and file a report.  There is thus no reasonable dispute that plaintiff was committing a trespass – in fact, plaintiff refused to leave the property when asked.  It is further undisputed that Gaskell saw plaintiff on the premises later that afternoon inside the real estate office, contravening Gaskell's earlier instruction that plaintiff was not permitted on the premises.  Thus, there is no reasonable dispute that at the time Gaskell stated that he was placing plaintiff under a citizen's arrest, plaintiff was committing a public offense (trespassing) in Gaskell's presence.  *See* Cal. Penal Code § 837(1).

1    In sum, there has been no constitutional deprivation of plaintiff's Fourth Amendment

2    rights.  For this reason, summary judgment in the Hardester's defendants' favor is warranted on

3    plaintiff's Section 1983 claim, and the Court need not reach the question of whether the

4    Hardester's defendants acted under color of state law.

5                    **B.  First Amendment Claim**

6            Although not raised expressly in plaintiff's complaint as a cause of action, the Court

7    nonetheless finds that his complaint, construed liberally, plausibly states a claim for violation of

8    his First Amendment right against both Officer Wright and the Hardester's defendants.[9]  Although

9    the bounds of this claim are not entirely clear, giving plaintiff the benefit he is due as a *pro se*

10   litigant, the Court understands his complaint to concern two potential First Amendment claims.

11   First, plaintiff appears to alleged that his arrest was in retaliation for protected activity.  Second,

12   plaintiff takes issue with Officer Wright and the Hardester's defendants' earlier requests that he

13   not speak to  children.  On both theories, the Court finds that that summary judgment in

14   defendants' favor is warranted.

15           As to plaintiff's first contention — that his arrest was in retaliation for protected activity—

16    the Court finds that he has failed to raise a disputed issue of material fact and therefore, that

17   summary judgment in favor of defendants is warranted.  "The First Amendment forbids

18   government officials from retaliating against individuals for speaking out."  *Blair v. Bethel Sch.*

19   *Dist*., 608 F.3d 540, 543 (9th Cir. 2010) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006);

20   *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)).  Specifically, a plaintiff must make

21   three showings: "(1) he engaged in activity that is constitutionally protected; (2) as a result, he was

22   subjected to adverse action by the defendant that would chill a person of ordinary firmness from

23   continuing to engage in the protected activity; and (3) there was a substantial causal relationship

24   _____

25           [9] The Court notes, however, that plaintiff has consistently stated that his claims in this
     action concern the legality of his arrest and the manner in which it was carried out.  For example,
26   in case management statements, plaintiff has never stated that he was advancing a first amendment
     claim, even during the brief time that he was represented by counsel. (*See e.g*., Dkt. No. 51
27   (parties' joint case management statement of April 1, 2014) at 2; Dkt. No. 52 (parties' amended
     joint case management statement of April 1, 2014) at 2.)  Nonetheless, the Court addresses this
28   issue as if fully advanced by plaintiff.

United States District Court
Northern District of California

between the constitutionally protected activity and the adverse action."  *Blair*, 608 F.3d at 543

(citing *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)); *see also Skoog v.*

*Cnty. of Clackamas*, 469 F.3d 1221, 1231–32 (9th Cir. 2006).

Here, probable cause plainly supported both Officer Wright's, and Gaskell's, arrest

plaintiff.  Plaintiff does not dispute that when asked to leave the shopping center, he refused, and

that he further resisted arrest when Officer Wright saw him on the premises despite Gaskell's

request that he leave.  The fact that Officer Wright had probable cause to arrest plaintiff "ha[s]

high probative force."  *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008);

(citing *Hartman v. Moore*, 547 U.S. 250, 265 (2006)).   Moreover, the record is entirely lacking in

*any* evidence that could support an inference that either Officer Wright or the Hardester's

defendants harbored any retaliatory motive against plaintiff for any protected First Amendment

activity.  Officer Wright had interfaced with plaintiff previously due to complaints about plaintiff

harassing and scaring children, but that again undermines the notion that Officer Wright's arrest of

plaintiff was in any way in retaliation for plaintiff's speech.  For the reasons set forth in *Dietrich*,

the Court finds that summary judgment for defendants is available here.  Namely:

> given the importance of "protecting government officials from the
> disruption caused by unfounded claims," *id.* at 1232, this case-which
> has very strong evidence of probable cause and very weak evidence
> of a retaliatory motive-falls outside the reach of *Skoog*. Importantly,
> if it did not, then nearly every retaliatory First Amendment claim
> would survive summary judgment. There is almost always a weak
> inference of retaliation whenever a plaintiff and a defendant have
> had previous negative interactions; holding that this case survives
> summary judgment would provide almost no "protect[ion for]
> government officials from the disruption caused by unfounded
> claims." *Id.*

*Dietrich*, 548 F.3d at 901.  No reasonable juror could find, based on the undisputed factual record,

that the defendants arrested plaintiff in retaliation for any First Amendment activities.

On plaintiff's second theory – plaintiff's apparent contention that Officer Wright's request

that he not speak to children without their parents present violated the First Amendment – the

Court also finds that summary judgment in defendants' favor is warranted.  Here, even construing

United States District Court
Northern District of California

1  the evidence in a light most favorable to plaintiff, the Court finds no evidence in support of a

2  constitutional violation.  First, although in his complaint, plaintiff cites cases involving the broad

3  protections due to religious speech, including dissemination of materials regarding the same, the

4  evidentiary record raises no dispute supporting an inference that plaintiff's right to speak about

5  religion was specifically compromised.

6       The Court notes that unlike the seminal cases discussing the reach of the First Amendment,

7  this case presents nothing akin to concerted speech activity, such as picketing, protesting,

8  demonstrating, or evangelizing.  There is no evidence to support an inference that plaintiff's

9  presence on the shopping center grounds was ever directed for the purpose of disseminating any

10  particular message, religious or otherwise.  Rather, plaintiff is a "regular" at the coffee shop,

11  hanging out for five or six hours a day, five days a week.  He communicates with other patrons, as

12  well as children, about many sorts of things, religious and non-religious.  There is no evidence of

13  record to support the notion that even plaintiff understands his appearance at the coffee shop as

14  undertaken in furtherance of any objective concerning speech.

15       Plaintiff's near-daily, lengthy presence at the coffee shop did not present issues until his

16  focus veered toward children.  At that point, parents became concerned.  In several interactions,

17  plaintiff was told that he should not speak to children without their parents present and was asked

18  to stop disturbing, harassing, and scaring customers.  Plaintiff assured Harper that he would stop

19  behaving in this manner.  Although plaintiff contends that such requests offended his First

20  Amendment rights, plaintiff has offered no evidence to suggest that defendants sought to inhibit

21  any particular message he might have had a right to convey.  While some of those

22  communications with children concerned plaintiff's religious beliefs, not all of them were

23  religious in nature.  (*Compare* Fidge Dep. at 74:22-75:6 (noting that in October 2013, plaintiff

24  only distributed one religious pamphlet to a minor) *with* 94:14-96:23 (describing non-religious

25  conversation with a minor).)  Rather, even construing all record evidence in plaintiff's favor,  there

26  is no dispute about the content-neutral nature of the request that he stop communicating with

27  unaccompanied minors.  *See Hill v. Colorado*, 530 U.S. 703, 719 (2000) (holding that regulation

28  of expressive activity is content-neutral if it is justified without reference to the content of

regulated speech).

Put differently, there is no evidence supporting an inference that the repeated requests that plaintiff stop speaking with unaccompanied children were motivated by Officer Wright's, or the Hardester's defendants', disapproval of the content of the messages plaintiff was conveying. Moreover, there is no evidence to support an inference that plaintiff was actually inhibited in any communications, religious or otherwise, insofar as such was welcome by other patrons, including parents who approved of plaintiff's communicating with their children.  Harper himself suggested that plaintiff seek permission from parents before communicating with their children.  (Harper Decl. ¶ 8.)  Notably, when asked to refrain from forcing unwelcome conversations on patrons and their children, plaintiff himself assured Harper that his behavior would stop and was permitted to stay at the coffee shop.  (Harper Decl. ¶ 9.)  In sum, even construed liberally in plaintiff's favor, he cannot raise a disputed material fact that the requests that he stop communicating with unaccompanied minors infringed his rights under the First Amendment.

## C.  State Law Claims

### 1.  False Arrest or Imprisonment

False imprisonment under California law is the "unlawful violation of the personal liberty of another." *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) (citation omitted).  False arrest is not a different tort; it is merely one way of committing a false imprisonment.  *See id.*  The California Supreme Court has defined false imprisonment as the violation of the personal liberty of another without lawful privilege.  *See Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 752 n.3 (1997).  "'The elements of a claim of false arrest or false imprisonment are: (1) the non-consensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief.'"  *Tekle v. United States*, 511 F.3d 839, 851 (9th Cir. 2007) (quoting *Easton v. Sutter Coast Hosp.*, 95 Cal. Rptr. 2d 316, 323 (Ct. App. 2000)).

For a state law claim of false arrest or false imprisonment, individual public officials are not immune.  *Robinson v. Solano*, 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc) (citing Cal. Govt. Code § 820.4).  Under California Penal Code section 847, "no cause of action shall arise against

United States District Court
Northern District of California

any peace officer . . . , acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest when . . . [t]he arrest was lawful . . . ." *See, e.g.,* *Blankenhorn*, 485 F.3d at 486-87 (arresting officers entitled to immunity pursuant to section 847(b) on state law false imprisonment claim where arresting officers had probable cause to arrest plaintiff for trespassing and acted within the scope of their authority under state law). In California, a warrantless arrest for a misdemeanor is lawful "only if the officer has reasonable cause to believe the misdemeanor was committed in the officer's presence." *Johanson v. Dept of Motor Vehicles*, 36 Cal. App. 4th 1209, 1216 (1995); Cal. Pen. Code § 836(a). An officer who accepts delivery of a person following a citizen's arrest is not liable for false arrest or false imprisonment even if the officer determines that there is no grounds for making a criminal complaint. *Kinney v. County of Contra Costa*, 8 Cal. App. 3d 761, 767-69 (1970).

### i. *Lake County Defendants*

Here, as a matter of law, plaintiff's claim against the Lake County defendants for false arrest or imprisonment cannot proceed, and summary judgment in defendants' favor is therefore warranted. As stated above, probable cause existed for Officer Wright's arrest. The showing of probable cause is therefore a defense to plaintiff's false arrest claim under California law. *See* Cal. Penal Code, § 836(a); *Arpin*, 261 F.3d at 920.

Accordingly, plaintiff's claim for false arrest and imprisonment against the Lake County defendants cannot prevail, and his motion for summary judgment on this ground is **DENIED**. The Lake County defendants' motion for summary judgment on this count is **GRANTED**.

### ii. *Hardester's Defendants*

The Hardester's defendants contend that plaintiff's claim for false arrest must fail because pursuant to California law, Gaskell effected a lawful citizen's arrest of plaintiff.

In California, a private person may arrest another for a public offense committed or attempted in his presence. Cal. Penal Code § 837(1). "A private person making a citizen's arrest need not physically take the suspect into custody, but may delegate that responsibility to an officer, and the act of the arrest may be implied from the citizen's act of summoning an officer, reporting the offense, and pointing out the suspect." *Meyers v. Redwood City,* 400 F.3d 765, 772

United States District Court
Northern District of California

United States District Court
Northern District of California

(9th Cir. 2005) (quotation and citation omitted).  A public offense is defined as "an act committed ... in violation of a law forbidding ... it," which is punishable on conviction by imprisonment or a fine.  Cal. Penal Code § 15(2) and (3).  The alleged crime supporting Gaskell's citizen's arrest in this case is misdemeanor trespass under California Penal Code section 602(m).  That section provides that it is a trespass to occupy property another's property without consent.  Cal. Penal Code § 602(m).  Conviction on this charge carries the possibility of a fine, imprisonment, or both, rendering it a "public offense" within the meaning of Section 837 of the California Penal Code.

As repeatedly outlined in this order, the undisputed facts of this case render apparent that Gaskell's citizen's arrest of plaintiff met this standard and was therefore not a false arrest.  *See Greene v. Bloom*, 2008 WL 1882800, at *10–11 (E.D. Cal., April 24, 2008) (holding store manager had legal authority to make citizen's arrest for misdemeanor trespass).

On October 3, 2014, Gaskell saw plaintiff on the shopping center property and told him that he needed to leave.  (Gaskell Decl. ¶ 5.)  Plaintiff refused and told him to call the sheriff.  (*Id.*)  Gaskell then left to call Harper and await law enforcement assistance.  In the meanwhile, plaintiff did not leave the shopping center.  Rather, he relocated to the inside of the real estate office next door to the coffee shop.  Gaskell returned and saw that despite the revocation of permission, plaintiff remained at the shopping center.  Thus, it is not disputed that plaintiff was committing a trespass, and that Gaskell observed this offense, at the time the citizen's arrest was made.

Accordingly, no reasonable trier of fact could find that the citizen's arrest of plaintiff was without lawful privilege.  Summary judgment for the Hardester's defendants on this claim is therefore appropriate.

### D.  CONCLUSION

For the reasons set forth above, defendants' motions for summary judgment are **GRANTED** and plaintiff's motion for summary judgment is **DENIED**.  The Court notes, however, that no party has moved for summary judgment on plaintiff's fourth and final cause of action, intentional infliction of emotional distress.  The Court's jurisdiction over this action was conferred by the existence of a federal question, specifically, plaintiff's Section 1983 claim.  Given that this order disposes of plaintiff's federal claim, no readily apparent basis exists for jurisdiction over the

remaining claim.

Accordingly, the parties are hereby **ORDERED TO SHOW CAUSE** why plaintiff's remaining claim should not be dismissed without prejudice for lack of jurisdiction.  In response to this order to show cause, no later than **Monday, July 6, 2015**, the parties shall file either: (a) statements of up to **FOUR PAGES** explaining whether a basis for jurisdiction exists; or (b) a one-page statement setting forth their failure to comply.  Failure to file a response as required will be construed as a concession that no basis for jurisdiction exists.

This order terminates Docket Nos. 106, 114, 129.

**IT IS SO ORDERED.**

Dated:  June 25, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**